*Messrs. Pegues & Murray,* for respondent, cite: *Presumption of legitimacy:* 73 S. C., 102. *Widow entitled to homestead:* 112 S. C., 400.

July 18, 1923.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the Circuit Court be affirmed as to the legitimacy of the children and allowances of homestead after costs of administration are paid, and as to so much of decree as allows John Thompson to be paid doctor's bills and funeral expenses, and that John Thompson be allowed to prove what was a reasonable charge for taking care of Crowley the last three months of his life; that account to be allowed as expenses of last illness and paid before homestead is set off.

MESSRS. JUSTICES FRASER, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.

---

11259

REID *ET AL* v. GAMBILL *ET AL.*

(118 S. E., 308)

1. MORTGAGES—ABSOLUTE DEED WITH OPTION IN GRANTORS' ATTORNEY TO SECURE RECONVEYANCE HELD NOT MORTGAGE.—A general warranty deed, absolute on its face, given in consideration of grantors' indebtedness to grantees, *held* an absolute conveyance and not a mortgage, though grantees gave grantors' attorney an option to secure a reconveyance, in view of grantees' agreement to release grantors from the general warranty.

---

NOTE: On parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended as a mortgage, see note in L. R. A., 1916B, 18.

2. MORTGAGES—CLEAR AND CONVINCING EVIDENCE REQUIRED TO CHANGE ABSOLUTE DEED INTO MORTGAGE.—The Court will not declare a deed absolute on its face to be a mortgage unless there is clear and convincing evidence that it was so intended by the parties.

3. MORTGAGES—WHETHER TRANSACTION AMOUNTS TO MORTGAGE OR SALE WITH OPTION TO REPURCHASE HELD QUESTION OF INTENTION.—Whether a transaction amounts to a mortgage or an absolute sale, with an agreement allowing vendor to repurchase at a stated price within a limited time, depends on the intention of the parties.

4. COVENANTS—UNDER GENERAL WARRANTY DEED GRANTORS' LIABILITY LIMITED TO CONSIDERATION RECEIVED.—Under a general warranty deed, grantor is liable for failure of title only to the amount of the consideration.

5. MORTGAGES—"CONDITIONAL SALE" AND "MORTGAGE" DIFFERENTIATED. —Where grantee has a right, reciprocal to that of grantor to demand reconveyance, to compel grantor to pay the consideration named in the stipulation for reconveyance, the transaction is a "mortgage," while if grantee has no such right the transaction is a "conditional sale."

Before ROBT. LIDE, Esq. SPECIAL JUDGE. Barnwell, September, 1922. Affirmed.

Action by E. G. R. Reid and wife against A. A. Gambill and others. Judgment for defendants and plaintiff appeals.

The opinion of the special Circuit Judge was as follows:

This case came on to be heard before me upon exceptions to the Master's report, by consent of all parties, at chambers, at Bamberg, while I was holding Court as Special Judge in Bamberg County. I heard the case at the special request of the attorneys representing both the plaintiffs and the defendants. I have gone over the record and testimony in this case very carefully, and have given it my most earnest consideration. The pleadings are set out in a very able and carfully considered report of the Master, and it is unnecessary to repeat them.

The controlling issue in this case is whether or not the deed from the plaintiffs to A. A. Gambill, which is absolute on its face, and the option to R. P. McNally, delivered simultaneously, constitute a mortgage. The answer depends en-

tirely upon the proper solution of that question. The Master found and held that the deed was a mortgage executed to secure the payment by the plaintiffs to the defendant A. A. Gambill of the sum of $1,066, which was the consideration named in the deed.

The parol testimony as to the transaction is conflicting, the plaintiffs testifying that the deed and the option were intended as a mortgage to secure the payment of a debt, and that the plaintiffs signed the deed under duress. The defendants' testimony is in direct conflict with that of the plaintiffs. The testimony of the plaintiffs that Reid was under duress at the time of the execution of this deed and prior thereto does not impress me. It appears from the testimony that Gambill charged Reid was short in his accounts, and Reid claims that he was held in custody by Gambill and under such duress he and Mrs. Reid agreed to execute the deed introduced in evidence in this case.

Reid and his witnesses testified that the purpose of the deed was to create a mortgage to secure his indebtedness to Gambill. Gambill's testimony was that there was nothing said in the arrangements concerning his taking a mortgage from Reid, but that Reid agreed to convey to him the property in Barnwell County in settlement of Reid's indebtedness to him. The testimony shows that Reid had full access to his attorney and brother-in-law, at Birmingham, Ala., immediately after he was charged with this shortage, and throughout the negotiations; and during the time when he claims he was under duress his attorney was in communication with him. From the testimony it appears that both Reid and Gambill had pistols, while together at the latter's home, which fact is hardly consistent with the claim that Reid was in custody. I cannot give credence to the contention that Reid's action in this matter was due to duress.

In the testimony there is nowhere a flat denial of Reid's indebtedness to Gambill. Reid did testify that he had not spent Gambill's money; but his readiness, under the advice of counsel, to secure his indebtedness to Gambill according to his contention or to convey his property to Gambill in

settlement of the shortage, as contended by Gambill, leaves no doubt in my mind that Reid was indebted to Gambill at the time.

These initial transactions took place in June 1905, and it appears at that time the full amount of the shortage had not been ascertained. Even in September, when the deed was executed, according to the testimony, the full shortage had not been ascertained, but was afterwards found to be greater than was then known to Gambill. I cannot believe that Reid's attorney would advise him to assume by the execution of a mortgage on his property the payment of a debt he did not owe, or to convey away his property in settlement of an unjust claim, or permit him under duress to enter into any such agreement. Throughout all of this period Reid was in communication with and undoubtedly acting upon advice of his counsel, an attorney learned in the law. There is no contention that any duress continued subsequent to the action in June, and at the time of the execution of the deed by Mr. and Mrs. Reid in September.

In view of the conflict in the testimony it is difficult to determine the question involved from the parol testimony. In search for truth, the intent of the parties at the time of the original transactions, we must seize upon such circumstances as point towards the true solution. These threads should be followed, as they entangle themselves in a maze of conflicting testimony, on through to the end. Then when conviction comes to one's mind from the quest for the truth, the duty has been performed; and this regardless of the effect of the determination upon the parties concerned with the outcome. In this case I must have recourse to the writings themselves in order to determine what was the intention of the parties at the time of the transaction.

"Each case of this character to a large extent depends upon the special circumstances of the particular case as was said in *Williams v. McManus,* 90 S. C., 494; 73 S. E., 1038: 'For the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings or disclosed by the extrinsic evidence.' 3 Pom. Equity, 1195; *Brown v. Bank,* 55 S. C., 70; 32 S. E., 816.

"The Court will not declare a deed absolute on its face to be a mortgage unless there is clear and convincing evidence that it was the intention of parties, when executed it was so intended, and in the absence of any writing at the time the deed was executed that it was intended to be other than it purported to be, the extrinsic evidence must be clear, convincing and preponderate." *Rush v. Green,* 103 S. C., 253; 87 S. E., 1010.

I do not think it is necessary to consider the minor issues in this case, but will only discuss the issue that I deem the controlling question in the case, namely, was the deed, absolute on its face, intended to be a deed of conveyance or a mortgage? The deed conveys the premises in question absolutely to the defendant, A. A. Gambill; while the option from A. A. Gambill and his wife to McNally gives McNally the privilege of paying to A. A. Gambill $1,066 on or before the 1st day of July, 1906, and upon so doing A. A. Gambill and his wife, Mrs. Nora E. Gambill, would execute to him a deed of the said premises. Mr. McNally was an attorney at law at Birmingham, Ala., and is a brother of the plaintiff, Mrs. Josie Reid. Both the deed and the option were probated on the 18th of September, 1905, and there seems to be no doubt that they were delivered contemporaneously.

Whether Mr. McNally was acting on his own behalf or on behalf of his clients, his brother-in-law and sister, and I do not so determine, I consider immaterial in the determination of this case. It was merely an option, according to the language of the instrument itself, which was to be exercised on or before July 1, 1906. There is no testimony that there was ever any offer to exercise this option on the part of Mr. McNally, either for himself or for the other parties, or any offer by Mr. or Mrs. Reid to exercise this option. The long delay in demanding a reconveyance of the property, and then only after the supposed life estate would possibly ripen into an ownership in fee, and the enhancement of land values, these are circumstances that should be considered.

As I understand the rule laid down by the decisions in this state, a paper that is "once a mortgage is always a mortgage." I have considered the facts and circumstances along with the written testimony, in this case very carefully in connection with the decision in the case of *Hamilton v. Hamer,* 99 S. C., 31; 82 S. E., 997; and the opinions in the recent case of *Brockington v. Lynch* (S. C.) 112 S. E., 94 I think the facts in the case now under consideration differentiates it from the rules laid down in the other cases decided in this State.

"Whether any particular transaction amounts to a mortgage or to an absolute sale, with an agreement allowing the vendor to repurchase the lands at a special price and within a time limited, 'must to a large extent depend on its own special circumstances; for the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings, or as disclosed by the intrinsic evidence.'" *Brown v. Bank,* 55 S. C., 70; 32 S. E., 824.

"Chief Justice McIver, in the case of *Petty v. Petty,* 52 S. C., 54; 29 S. E., 406, says that "the presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land. To overcome this presumption, and establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail."

I will endeavor to apply these principles to the facts of this case. At the time of this transaction, unquestionably the plaintiff Mr. Reid was indebted to A. A. Gambill in a sum of money then estimated to be $1,066. It happened upon a further accounting he was really indebted to him in a sum considerably larger than that, possibly from $2,300 to $2,500. In order to settle that indebtedness of $1,066, E. G. R. Reid and his wife, Mrs. Josie Reid, executed the deed in question, which was a deed absolute on its face.

Undoubtedly Reid was in a better position to know the amount of his shortage than was Gambill. At the time of the execution of the deed, according to the check up by Gam-

bill's accountant, Reid was indebted to him in the sum of $1,066. If Reid was then indebted to Gambill in a larger sum, which had not then been ascertained, and there seems no doubt from the testimony that subsequently the shortage turned out to be a larger sum, it seems reasonable that Reid would be. willing to convey the property to Gambill in full settlement; especially so, when Gambill was willing to accept the conveyance at that time in full settlement of the indebtedness between the parties. Reid owed Gambill a sum of money, as then ascertained more than he could pay, and probably knew that further developments would increase the amount of this indebtedness. The only property that he had was a life estate in the property in Barnwell County, according to his understanding at that time, and so far as is now before us, and it is merely problematical to conjecture as to a proper valuation to place upon a life estate in this property. Had Reid's death occurred shortly after the execution of the deed, there would have been nothing for Gambill and no chance for him to recover the amount of his losses. Evidently Reid acting under the advice of his attorney, was well aware of these facts and perfectly willing to end the disagreeable and unpleasant transaction by the settlement made, which was carried out without notoriety and without injuring his future opportunity to make good in other business in the city of Birmingham. This view is further strengthened by the fact that after discovering the larger shortage Gambill never made a claim against Reid for it, nor did he endeavor to secure its payment. The incident had been closed by a conveyance of the property.

From the deed alone, and the reconveyance agreement or option executed by Gambill and his·wife in favor of McNally, there possibly might be reason to hold that it was the intention of the parties for the deed to be a mortgage to secure the. debt. However, there is another paper that was prepared and executed at the same time, which in my opinion conclusively decides this question. To my mind it clearly furnishes the preponderating weight. As already stated, there was some question as to the nature of the in-

terest in the estate that E. G. R. Reid and his wife had in the property in question. They only claimed a life estate for Reid in this property and so advised Gambill. The deed to Gambill was a general warranty deed, and after the execution of the deed by Mr. and Mrs. Reid, Gambill executed and delivered to them an agreement to release them from the general warranty, which was in writing, delivered to Mr. McNally, the attorney for Mr. and Mrs. Reid, and introduced in evidence by plaintiffs in this case. It makes no difference by whom this agreement was prepared, by Gambill's or by Reid's attorney.

This agreement recites that, whereas, A. A. Gambill "has bought from E. G. R. Reid and his wife, Josie Reid, certain lands in South Carolina amounting to about one hundred (100) acres, more or less, which is specifically described in the deed conveying said land in the County of Barnwell, is said State of South Carolina; which said deed was executed on the 18th day of Sept., 1905; and, whereas, in said deed there is a genaral warranty of title to the land conveyed; and, whereas, it may be doubtful whether or not the said E. G. R. Reid and his wife, Josie Reid, have more than a life estate in said land: Therefore, in consideration of the premises, I do hereby agree not to hold the said E. G. R. Reid and his wife Josie Reid, on said warranty further than the life estate in said property: That is to say, if it should appear hereafter that the said Reid and wife only have a life estate in the property that the warranty in the deed shall only cover said life estate, and they shall not be held liable on said warranty further than the life estate. If, however, they have a fee simple title to the land, then the warranty shall apply to the whole estate."

As I understand the law under a general warranty deed, the grantors could be vouched to defend the title and in case of loss or failure of the title be held liable only to the amount of the consideration. If it was intended for a sale of the property and the deed was intended to be what on its face it purports to be, then with this instrument there was

a completed transaction between the parties. Reid had sold and conveyed his property to Gambill in full settlement of all of his indebtedness to him and Gambill had so accepted it, Reid under no further obligations to Gambill had so accepted it, and Gambill with no further hold upon Reid; no matter what the ultimate outcome as to the estate or interest Reid had in the property, there should never be further claim made against Reid by Gambill; and Gambill lived up to the bargain, although the shortage turned out to be greater than then known to him.

Why was this agreement necessary, if the deed was only intended as a mortgage at the time? Both parties undoubtedly had consulted counsel, and the attorneys evidently knew what they were doing when the papers in this case were prepared and executed. I cannot reason out this case upon any other hypothesis than, upon execution and delivery of this agreement by Gambill releasing Mr. and Mrs. Reid from liability under their general warranty, it discloses the intention of the parties that the transaction between them was then closed and the deed was what it purports on its face to be, a conveyance of the property to Gambill.

If it was intended as a mortgage to secure indebtedness to the amount of the consideration stated therein, then Reid would be owing this money to Gambill; and having only a life estate in the property conveyed under a general warranty would not effect his obligation or duty to pay the debt. I cannot see where it would make any difference as to the nature of the estate Reid had in this property, whether a life estate or title in fee, or whether its actual value was greater or less than the consideration stated in the deed, if it was intended only to give to Gambill a mortgage. The debt would be extinguished only by payment of the amount due or the debt credited with whatever could be realized from a foreclosure and sale of the property, whatever estate Reid may have therein. In such event, there could be no possible necessity for the agreement on the part of Gam-

bill to release from liability under the general warranty clause in the deed.

"The principal test, however, is whether the relation of the parties toward each other as debtor or creditor continued after the execution of the instrument or instruments." 20 Am. & Eng. Enc. of Law, 940.

"As regards their legal incidents, there is all the difference in the world between a mortgage and a sale with the right of repurchase. If the contract is one of the former description, the right of redemption subsists until it has been cut off by a forclosure sale of the latter description; there is no right of redemption in the transferer after the expiration of the time fixed for the payment of the stipulated price. But in practice the line of demarcation between the two is shadowy, and it is frequently a matter of great difficulty to determine to which category a given transaction belongs. However, there is a test generally accepted as decisive, and this is the mutuality and reciprocity of the remedies of the parties; that is to say, if the grantee enjoys a right, reciprocal to that of the grantor to demand reconveyance, personally to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage, while if he has no such right to compel payment the transaction is a conditional sale. This test is a derivation of the consideration that personal liability of the grantor is regarded either as the *sine qua non* of a mortgage or as a factor whose existence or non-existence points strongly to the fact that conveyance is or is not a mortgage." 19 R. C. L., 266.

It is with very great reluctance that I am constrained to disagree with the Master in his findings in this case. His report is well prepared, and by a lawyer of ability and capacity, whose reasoning and conclusion I would be glad to accept. However, I am unable to do so, as I think this agreement on the part of Gambill to relieve on the warranty clearly establishes the fact that at the time of the execution of the deed it was so intended as on its face it pur-

ports, and was not intended as a mortgage to secure the debt, but it was given and accepted in full settlement of all indebtedness of Reid to Gambill. I can place no other construction upon the transaction between the parties in view of his agreement by Gambill executed and delivered, and accepted by Mr. and Mrs. Reid, through their attorney and as a part of the entire original transaction. I am satisfied, after a careful analysis of the documentary evidence in this case, together with a consideration of all the testimony, that the instrument in question is, what on its face it purports to be, a deed and not a mortgage.

It is, therefore, ordered, adjudged, and decreed, that the exceptions to the Master's report be sustained, and that the complaint in this action be and hereby is, dismissed.

*Messrs. Holman & Boulware,* for appellants, cite: *Deed as mortgage:* 129 U. S., 58; 112 S. E., 109. *Delay in bringing suit does not defeat right:* 92 S. C., 501. *Adverse possession unavailing:* 110 S. E., 135.

*Messrs. Harley & Blatt,* for respondent, cite: *Deed with option to repurchase is not a mortgage:* 27 Cyc., 999; 20 Enc. L., 940; 129 U. S., 58; 149 U. S., 17; 118 U. S., 73; 116 U. S., 108; 97 U. S., 624; 112 U. S., 144; 19 R. C. L., 262; 3 L. Ed., 321; 31 S. C., 277; 3 Pom. Eq. Jur., Sec., 1195; 81 S. E., 173; 39 S. E., 575; 32 S. E., 816; 54 S. C., 191; 90 S. C., 490. *Option to repurchase must be strictly complied with:* 66 S. C., 85; 20 S. E., 406; 3 S. E., 906; 81 S. E., 77; 44 S. E., 584; 129 A. L. R., 1113; 103 S. C., 257; 43 Me., 585; 42 Pa., 251; 124 Ill., 45; 66 So:, 615; 29 Ala., 226; 96 S. E., 255; 110 S. E., 482; 112 S. E., 94; 19 R. C. L., 266; 92 Ala., 474; 32 S. E., 816. *And promptly:* 27 Cyc., 1031; 62 S. C., 173. *Inadequacy of consideration insufficient:* 20 A. S. R., 239.

June 26, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

For the reasons therein stated, the decree of Hon. Robert Lide, Special Circuit Judge is affirmed.

---

### 10581

### TERRY PACKING CO. v. SOUTHERN EXPRESS CO.

#### (118 S. E. 628)

#### (Four Cases)

CORPORATIONS—SERVICE ON FOREIGN CORPORATION HELD VALID, THOUGH IT HAD WITHDRAWN FROM STATE.—Where the summons in an action against a foreign corporation was served in February, 1920, by leaving it on the premises designated in the last annual statement, filed February 2, 1918, as the place at which papers may be served, and on March 6, 1920, defendant filed with the secretary of state an application for a withdrawal, *held*, that the service was valid, though defendant had withdrawn from, and was not doing business within, the state.

Before WHALEY, J., County Court, Richland, April, 1920. Affirmed.

Action by Terry Packing Co. against Southern Express Co. From an order refusing to set aside the service of the summons, the defendant appeals.

The order of Judge Whaley, referred to in the opinion, follows:

Plaintiff commenced his actions, four in number, against the defendant, upon complaints alleging that the plaintiff is a corporation organized under the laws of South Carolina, having its principal place of business at Columbia, in said State, with branch places of business, one in Charleston under the name of Terry Fish Company, and one in Columbia under the name of Columbia Fish & Ice Company; that the defendant is a corporation organized under the laws of the State of Georgia and domesticated under the

---

NOTE: On revocation by foreign corporation of appointment of attorney or agent to receive service of process see note in 30 L. R. A. (N. S.), 678.

Writ of error dismissed, 260 U. S. 707.